We'll hear the next case, Broxmeyer. Please, the court, my name is Lawrence Gerzog and I represent Todd Broxmeyer on this appeal of the district court's denial of his 2255 petition seeking to overturn his district court conviction. Speak up, Mr. Gerzog. Certainly will, Your Honor. Thank you. You can probably pull that mic just a little. I'll do that as well. There we go. Is that a little better? There we go. Very good. Thank you so much. Your Honors, I believe that the representation that Mr. Broxmeyer received was grievously ineffective and that the district court below was completely wrong in denying his 2255 application. Now, this case has had a long history. True. And up to this point, had there been any allegations involving the inadequacy of the lawyer? Absolutely. Not long after the trial jury's verdict, Mr. Broxmeyer wrote to the court and said, made many of the statements that he relies on here about counsel's abuse of alcohol, counsel's failure to properly investigate the case and so forth and asked. What's the evidence of intoxication? Well, there's no specific evidence. Obviously, no one's breathalyzed when they come into the courtroom. But Mr. Broxmeyer. It seemed that the counsel for Mr. Broxmeyer was very much engaged and raised a number of objections. Some of his objections were sustained. He was your Mr. Broxmeyer was acquitted on some charges, in part based on the arguments made by Mr. Broxmeyer. Actually, I believe I believe Mr. Broxmeyer was initially convicted on all counts. And then this court vacated. Well, I would argue, quite frankly, that that it doesn't show. And I don't mean to disparage my colleague personally, but the fact that he. You got an ineffective assistance account. You got no choice. Well, I don't mean to attack him, you know, ad hominem. In this particular case, in this particular case, he made a lot of mistakes. And it didn't take a legal scholar, quite frankly, in my view, to make the motion to have those counts overturned. So you can't say that because he made what any lawyer would have made that the rest of his mistakes, which, you know, the prosecutor's summation in this case was egregious. It was really awful and really flew in the face of this court's admonitions that a prosecutor has to stick to the facts, has to not inflame the jury. And the trial counsel did never, did not object at all. The district court said, oh, well, that was a determination that he made, a strategic determination that he was going to address those egregious things in his summation. I can understand your argument about the concerns about the prosecutor's statement, and we will ask your adversary about them. But where ultimately is the prejudice? Well, the prejudice, Your Honor, is that it's twofold. One is the jury heard all those things that the jury should never have heard. And the jury should have heard an objection and then the trial judge stern admonition to the prosecutor to cut it out. That's the first thing the jury should have heard. And then the second thing that the jury should have understood from that was that the nature of the conviction here, the fact that he was convicted on five counts, three of which this Court then threw out, shows that because this was a controversial and somewhat salacious case, that the jury was moved and motivated by those outrageous comments of the prosecutor at summation. And it can't be said. Didn't he raise it in his own? Didn't the lawyer, though, correct me if I'm wrong, raise it in his own summation? He did. But how can any reasonable judge, and now I'm referring to the district court judge, how can any reasonable judge say that that's a strategic decision, that I'm going to let the prosecutor say all kinds of outrageous things, and then in my summation I'm going to say those things were outrageous? Should the judge have interviewed Sua Sponte? I think he should have, quite frankly. But any, with all due respect, again, any lawyer should have objected, and then perhaps having lost the objection, resorted to attacking those comments in the summation, in his own summation. But you're saying in that regard at least that the former lawyer didn't even rise, his handling of the case didn't even rise to the standard of care applicable? Absolutely, Judge. And it shows prejudice because the jury convicted on counts that this Court itself said there was absolutely insufficient evidence for. If you might recall, Mr. Gerst, I was not aware of this opinion. I'm fully aware of that, Judge. There was a legal issue there that was a little bit dicey as far as I was concerned. Well, and I read your opinion, Judge, and it's a thoughtful one, but two of your colleagues disagreed. That doesn't do me any good. Well, it just goes to show your scholarship, Judge, but not anything else. Perhaps, perhaps. But I guess my problem in this is that there was just a ton of evidence about this fellow's activities with these young ladies and his manipulation of these young women into producing photographs of themselves. Well, wait, wait just a second. And one of the key people in this was A.W., who was a little older, and A.W. obviously was a favorable witness to him in some ways and wasn't, I mean, wasn't the attorney quite skillful in his examination of A.W. and was able to establish that there was absolutely no coercion on Brockmeier's part with regard to A.W. Well, again. And that's what ultimately got Judge Jacobs, except later on. Your Honor, the – and if you wish, I'll speak to the sentencing opinion as well. But, again, I believe that the cross-examination of A.W. wasn't particularly skillful. It was evident that what A.W. said was inherently – when the prosecutor questioned A.W., A.W.'s answers, even to the prosecutor, didn't give rise to sufficient evidence. And then as to the – as to the sentencing opinion, all that does, Judge, is show that even among well-respected jurists, this case is a controversial one. I'm not here to say that what Mr. Brockmeier did was appropriate. No, no. I get it. But, you know, reasonable people can differ, and there was a very pointed difference, obviously, in the sentencing opinion. What would an evidentiary hearing get you? Well, an evidentiary hearing would get the lawyer's side of the story. You are, I'm sure, familiar with the fact that in most ineffective assistance cases, defense counsel is invited to submit an affidavit defending his behavior. And most defense lawyers are only too happy to submit an affidavit saying, this guy's a liar, I did a good job. No affidavit here. So there's only – What's the question? That I don't know. And the – obviously, the lawyer – Mr. Brockmeier, who did this pro se, wasn't going to get an affidavit from his attorney saying, you're right, I screwed up. And so the government's either failure to request it or the lawyer's failure to produce it after it was requested and the lawyer's failure to produce it almost begs for an evidentiary hearing at which the lawyer can be subpoenaed. Thank you. Thank you. May it please the Court, my name is Karina Schoenberger. I represent the government on this appeal. The district court's judgment should be affirmed. There's a strong presumption that the counsel that is provided by attorneys is reasonable, and Mr. Brockmeier has failed to sustain the heavy burden of showing that the assistance that he received was ineffective. With respect to – Could you – could I just ask you, and you'll have the time you need to make your points, just turn to the prosecutor's statements. The prosecutor referred to Brockmeier as a creepy sexual predator who the jury should stop in its tracks, referred to Brockmeier as just plain pathetic, called him a liar. And there have been, as I understand it, other cases involving that prosecutor where the prosecutor, correct me if I'm wrong, had been admonished not to give such statements, make such statements. Your Honor. Why isn't that a concern here? The government's summation here included improper statements and statements that could have been objected to. But the operative question is whether the choices made by Mr. Brockmeier – Is there a training that goes on in the office? How does that work? When someone is admonished, is there a training where you get the assistants together and say, here's what the court has said and here's what you should try to avoid doing? I don't know the answer to that question, Your Honor, and I'm afraid that the record doesn't reflect it either. But Mr. Brockmeier's position here is that his trial attorney remained silent in the face of statements that were improper. And, in fact, that's not the case. He used those statements in his own closing remarks, and essentially his theme was that the government is relying on rhetoric because there's insufficient evidence to prove the elements of the crime. And he actually addressed specific comments that were made by the prosecutor. And he said things like, now when the government gave you their inflammatory comments and prejudicial opinions, that wasn't evidence. That was at the transcript on page 321. He says that the prosecution has introduced a number of things in an effort to show you that Mr. Brockmeier somehow had the propensity or proclivity that he enjoys young women that he solely presented to you to inflame your opinions, your ideas, your thoughts, to shade you and to misguide you from the facts of this case and from how they fall into the elements. He acknowledged you may not like Mr. Brockmeier. You may even despise him. You may have emotions that have been stirred up in you, that you really have an opinion about who he is and what he's like. But as jurors, your sworn duty is to set these opinions and those feelings aside. And Mr. Brockmeier's attorney reminded the jury that they should focus on the elements, that you cannot speculate on the facts here, and that's what the government is asking you to do. In large part, they're asking you to speculate on Mr. Brockmeier's motive, on his intent, on his character, on all these things that you've heard about. And you've also asked to speculate on certain facts, and you're not permitted to speculate. And he went on throughout his closing remarks saying you could fall into the trap of saying, well, you know, we heard the government's argument that Mr. Brockmeier is a pedophile, a predator, and you listen to those terms and you get inflamed and you form opinions in your head. Well, those are the very opinions that you have to put out of your head. And then he reminded the jury we're talking about a limited amount of evidence, a very limited amount, not just overall this picture, not this umbrella of pedophilia, this umbrella of perpetrator that's committing all these violent acts against young ladies. These are specific charges for which specific evidence has to support, and it's up to you to decide whether that supports it. So he didn't make objections during the government's closing, and perhaps he could have, but the Strickland test allows for a range of choices to be made by an attorney. And the decision whether to object or not is one that's given wide latitude. It is considered a matter of tactics. And Mr. Brockmeier's position that somehow his attorney let these remarks go unnoticed isn't borne out by the record itself. With respect to Ms. Counsel, just before you get there, would you remind me, and I'm sorry I don't remember this myself, but is Judge McAvoy's charge to the jury in here? Because normally judges were, his argument presaged the judge's charge, which he would say to the jury, don't speculate, and what the attorneys argue isn't evidence and that sort of thing. Yes, the government, pardon me, the district court gave instructions both at the beginning of the trial and after closing remarks and said, among other things, that what the attorneys say to you is not evidence, that it's their duty to not be guided by their passions and other standard instructions that would respond to the very things that Mr. Brockmeier is complaining about here. So Counsel sounds very wise then in saying, where the jury can say, oh, the judge is telling us that, too. I see what he's talking about. I mean, he's weaving in both the instructions of the government and the remarks that they've heard and making sure that he addresses them to the jury to explain why they shouldn't be regarded. Mr. Brockmeier has also made a bald accusation that his attorney was intoxicated during the trial, and that is simply unsupported. It was raised for the first time three months after trial ended in a letter to the court, and Mr. Brockmeier said that his attorney smelled of alcohol and that he believed he was drunk because his questions and his arguments were incoherent. A review of the trial record does not display any sort of incoherence on the part of the trial attorney, and there is nothing else to indicate that the attorney was intoxicated during the trial. The district court presided over every day of the trial and the proceedings leading up to and after it and observed in his own written opinion that he didn't see any indication of alcohol use or abuse. Mr. Brockmeier has tried to put forth some police records to support that, but they are entirely irrelevant and don't address any sort of alcohol abuse or criminal conduct related to that. What about the concern that there is no evidence in the record about the nature of the conversations regarding whether Mr. Brockmeier could testify or should testify or not and that an affidavit is warranted in that circumstance? There is on the record a colloquy with the court where the district court specifically asked Mr. Brockmeier if he was advised of his right to testify and if he was willingly waiving that right, and Mr. Brockmeier said that he had been advised and he was waiving that right. If there was advice given to him that he should not testify, Mr. Brockmeier has not shown that that was unreasonable advice. At the time of the trial, there were pending state charges that were based on sexual assaults related to some of the victims in the federal case, and it could be that that was part of the reason that he was advised not to testify if, in fact, he was. At any event, to satisfy Strickland, he would both have to show that there was deficient performance and prejudice, and here he has really shown neither with respect to that issue. It's unclear how an affidavit could change that. With respect to the performance of Mr. Brockmeier's sentencing counsel, this Court has already had the opportunity to review the very conduct that Mr. Brockmeier complains about, specifically the decision not to seek rulings on factual objections at the second sentencing. The factual objections were to a pre-sentence investigation report that was largely identical to at the first sentencing. The judge had already made rulings on those objections and indicated at the second hearing that his rulings would be the same. Mr. Brockmeier also sought an evidentiary hearing here. For the most part, the conduct that he discusses is based on undisputed facts to the extent that there were any disputed facts. They've already been discussed here a bit with respect to the purported intoxication of the attorney and conversations that took place off the record. The district court had ample support in the record before it to make its decision and no evidentiary hearing was required. Is there any explanation in the record? I didn't find any. I don't think we have found any. That explains why counsel was not asked to provide an affidavit in response to some of these allegations. That is not in the record, Your Honor. Okay. The government didn't ask or suggest that counsel be asked to provide an affidavit in response. I don't believe so. At least that's not reflected in the record as I've seen it. Thank you. In summary, Mr. Broxmeier has not sustained his burden here and the district court's decision should be affirmed. Thank you. The court asked my adversary whether there was anything in place in the Northern District of New York to train prosecutors not to abuse their power in summations. As a former assistant U.S. attorney myself in the Eastern District of New York, I can tell the court that I received training in Washington, D.C., at the Department of Justice on that very subject. I don't know, of course, whether this prosecutor had that same training. More importantly than that, in terms of this specific case, imagine, Your Honors, if you would, that the prosecutor had used racial or ethnic expletives. This defendant is a blank, and we all know that blanks are rapists or we all know that blanks commit crimes. Would any rational person say, well, there's a strategic decision there. I'm going to let him say those things. And then in my summation ---- It seems to me, Mr. Gerzog, in contrast to that, which is obviously horrendous and any judge should sit on it immediately or stomp it out, that this is related specifically to the conduct at issue. And I'm not condoning it. I'm not saying anything by which I would condone that as a judge. But it seems to me, in light of our prior ---- of our discussion and counsel ---- opposing counsel's response, that I have a hard time seeing why that cannot be characterized as a strategic decision and, frankly, to get personal, one that I might have tried myself. You know, I just cannot see and, you know, reasonable minds can differ, I suppose, but I cannot see respectfully any way in which someone would not object to having these awful characterizations made about his client. If they're admitted, then you can defend against them. But if reasonable minds can differ on that or reasonable judges can differ on that, you lose, right? Well, no, not necessarily, Judge. I mean, because the fact that ---- and I don't want to discuss Your Honor's ability as a traveler. No, no, no. Leave that out. But to me, a reasonable mind can't differ as to whether that ---- whether it makes sense to allow those kind of statements. And I do agree with Your Honor that they were somewhat related. It wasn't as if he said, because he's a blank, he must be guilty. Right. They were statements about his sexual proclivities, but they were outrageous and irrelevant statements about his sexual proclivities. And there is nothing in the record. Mr. Brocksmeier said, my counsel was drunk when he prepared, when we spoke. I could smell alcohol on his breath. The judge said, I didn't see any evidence of drunkenness at trial. That begs the question. Well, that certainly, you know, the conduct of the attorney during the trial can be observed by the judge, and the judge, I suppose, can make a determination. It would be a lot easier to decide what the motivation of the attorney was with regard to the U.S. attorney's summation if the defense counsel had submitted an affidavit and said, I didn't want to ---- A defense counsel. The government, you mean. I was going to use it strategically. I mean, that's what ---- Oh, yes. Former defense counsel. Well, absolutely. If there had been a record, there are myriad cases in which a judge has a statement by a disgruntled defendant and then a statement by counsel that says, no, that's not true, we discussed it, and the judge credits the lawyer. That's fair. That's reasonable. That didn't happen here. Okay. Thank you. Thank you both. Thank you both for your arguments. The Court will reserve decision.